1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VARINDERJIT SINGH, | Case No.  1:13-cv-01894-SKO |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO REMAND** |
| v. | (Doc. No. 8) |
| JONATHAN CRAWFORD, Officer In Charge of the Fresno Office of the United States Citizenship Immigration Services, ERIC HOLDER, Attorney General of the United States, | |
| Defendants. | |
| _____/ | |

## I.   INTRODUCTION

On November 21, 2013, Plaintiff filed a complaint for declaratory judgment of naturalization pursuant to 8 U.S.C. §§ 1421(c) and 1447(b).  On January 29, 2014, Defendants Jonathan Crawford, Officer in Charge of the Fresno Office of the United States Citizenship Immigration Services, and Eric Holder, Attorney General of the United States (collectively, "Defendants") filed a motion to remand.  (Doc. 8.)  On February 10, 2014, Plaintiff filed a brief in opposition, and on February 28, 2014, Defendants filed a reply.  (Docs. 10, 11, 12.)  For the reasons set forth below, Defendants' motion is GRANTED.

## II.   BACKGROUND

Plaintiff filed a complaint on November 21, 2013, seeking a judicial determination of his naturalization application and a declaration that he is entitled to be naturalized as a citizen of the United States.  (Doc. 2.)

On January 29, 2014, Defendants filed a Motion to Remand requesting that the Court exercise its discretion to remand the matter to the United States Citizenship and Immigration Services ("USCIS") with instructions that USCIS adjudicate Plaintiff's naturalization application within 15 days.  (Doc. 8.)  In support of their motion, Defendants filed the declaration of Stephen D. Hull.  (Doc. 8-1, Hull Decl.)  Mr. Hull states USCIS conducted an interview of Plaintiff on July 16, 2013, in conjunction with Plaintiff's N-400 Application for Citizenship ("Application").  The Application was approved on July 22, 2013, but before Plaintiff was administered the oath of citizenship, USCIS received information from anonymous sources that Plaintiff was involved "in a course of conduct that is consistent with the procurement of an immigrant visa through fraud/misrepresentation."  (Doc. 8-1, Hull Decl., ¶ 3.)  The information required further review regarding Plaintiff's eligibility for citizenship; this review was conducted between July 22, 2013, and January 21, 2014.  (Doc. 8-1, Hull Decl., ¶ 3.)  Thus, a decision on Plaintiff's naturalization Application was not finalized within the 120-day statutory period following Plaintiff's interview. *See* 8 U.S.C. § 1447(b).  Nevertheless, Mr. Hull represents that "[b]ackground checks are current and USCIS Fresno will adjudicate [Plaintiff's] Form N400 upon remand."  (Doc. 8-1, Hull Decl., ¶ 3.)

Plaintiff filed an opposition asserting the Court should deny the Motion to Remand, retain jurisdiction, and adjudicate his naturalization Application in the first instance.  Plaintiff contends the "Government has shown by its prior rulings and circumvention of the N-400 appeal process to[] not be willing to follow the law or produce appropriate evidence that supports a finding of fraud/misrepresentation."  (Doc. 10, 2:9-11.)  Plaintiff asserts Defendants' Motion to Remand is a disguised attempt to keep evidence from being presented before this or any other court.  (Doc. 10, 2:20-23.)

1    In support of his opposition, Plaintiff submits the declaration of Steven P. Simonian, Jr.

2  (Doc. 11.)    Mr. Simonian's declaration states Plaintiff submitted an N-400 Application for

3  Citizenship on March 4, 2006, which was denied on April 25, 2007.  (Doc. 11, Simonian Decl.,

4  ¶ 4.)   According to Mr. Simonian, the denial was based on an unsubstantiated allegation that

5  Plaintiff procured his immigration visa through fraud/misrepresentation by declaring to USCIS

6  that he was an unmarried son of a permanent resident who was entitled to a visa pursuant to entry.

7  (Doc. 11, Simonian Decl., ¶ 4.)   In adjudicating the Application, the government asserted Plaintiff

8  was married when he applied for a visa and entered the United States which, if proven, would

9  disqualify Plaintiff for entry into the United States.  (Doc. 11, Simonian Decl., ¶ 4.)     Following

10  the denial of his 2006 Application for Citizenship, USCIS caused the initiation of removal

11  proceedings against Plaintiff.  (Doc. 11, Simonian Decl., ¶ 4.)

12    Mr. Simonian states he was retained to assist Plaintiff during his removal proceedings.

13  (Doc. 11, Simonian Decl., ¶ 5.)   After Plaintiff filed a motion to terminate the removal

14  proceedings, an evidentiary hearing was conducted where Plaintiff produced a marriage certificate

15  establishing he was married on May 16, 2001, seven months *after* he entered the United States.

16  (Doc. 11, Simonian Decl., ¶ 5; Doc. 11-1, Exhibit B.)   The government produced no evidence

17  showing Plaintiff was married prior to May 16, 2001.  (Doc. 11, Simonian Decl., ¶ 4.)  Based on

18  the government's failure to establish Plaintiff misrepresented his marital status when he applied for

19  a visa, the Immigration Court terminated the removal proceedings.  (Doc. 11, Simonian Decl., ¶ 4;

20  Doc. 11-1, Exhibit C.)

21    Thereafter, Mr. Simonian filed a second N-400 Application for Citizenship on behalf of

22  Plaintiff.   USCIS again denied the Application on March 25, 2011, contending that because

23  Plaintiff fathered a child prior to October 8, 2000, he must have been married at the time he filed

24  his Application, and therefore was ineligible for a visa and entry into the United States.  (Doc. 11,

25  Simonian Decl., ¶ 6.)

26    After this second denial of his naturalization Application, Plaintiff filed an administrative

27  appeal.  (Doc. 11, Simonian Decl., ¶ 7.)  The government again commenced removal proceedings

28  against Plaintiff, which terminated Plaintiff's administrative appeal.  (Doc. 11, Simonian Decl., ¶

4.)   The removal proceedings, however, were again terminated after the government failed to produce any evidence of a prior marriage or any other corroboration of its contention that Plaintiff's visa was obtained through fraud or misrepresentation.  (Doc. 11, Simonian Decl., ¶ 8; Doc. 11-1, Exhibit E.)

Plaintiff filed a third N-400 Application for Citizenship on March 27, 2013, and was interviewed on July 16, 2013, by USCIS.  (Doc. 11, Simonian Decl., ¶ 10.)  USCIS failed to issue a decision within the 120-day required period following the interview.  (Doc. 11, Simonian Decl., ¶ 10.)  Mr. Simonian's declaration contends the government had two occasions to prove a viable basis for the denial of Plaintiff's naturalization Application, and the removal proceedings clearly show that USCIS is not equipped to resolve this matter by producing or basing its decision on appropriate evidence that is admissible and reliable.  (Doc. 11, Simonian Decl., ¶ 13.)

## III.   DISCUSSION

### A.   Legal Standard

The USCIS is the division of the Department of Homeland Security responsible for adjudicating naturalization applications.  *See* 6 U.S.C. § 271(b).  If USCIS fails to adjudicate an application for citizenship within 120 days from the date USCIS initially interviewed the applicant, the applicant may petition a United States district court for a hearing on the matter.  *See* 8 U.S.C. §1447(b); *United States v. Hovsepian*, 359 F.3d 1144, 1160 (9th Cir. 2004) (holding the initial interview date triggers the 120-day period under Section 1447(b)).  Once a petition is filed by the applicant, the "court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [USCIS] to determine the matter." 8 U.S.C. § 1447(b).  In this case, over 120 days have passed since Plaintiff's initial interview on July 16, 2013.

Pursuant to 8 U.S.C. § 1447(b), the Court must adjudicate Plaintiff's naturalization Application or remand it to USCIS.  *Hovsepian*, 359 F.3d at 1160.  Generally, a court should "remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002); *see also I.N.S. v. Aguirre-Aguirre*,

1    526 U.S. 415, 425 (1999) ("[J]udicial deference to the Executive Branch is especially appropriate

2    in the immigration context.").

3    **B.      Plaintiff's Naturalization Application Shall Be Remanded to USCIS**

4            Although  district  courts  are  vested  with  jurisdiction  to  decide  applications  for

5    naturalization, the majority of courts remand these matters to the USCIS to decide in the first

6    instance whether to grant or deny citizenship.  *See Volovnikov v. DHS*, No. 07-3607 (EDL), 2008

7    WL 666023, at *3 (N.D. Cal. Mar. 6, 2008) (listing district courts which remanded to the USCIS);

8    *see also Patel v. Hansen*, No. 07-0792, 2008 WL 148947, at *1 (S.D. Ohio Jan. 4, 2008) ("Almost

9    without exception, courts have elected to remand [naturalization] questions to the USCIS.")).

10            Here, like the majority of courts that have remanded naturalization applications to USCIS,

11    the Court finds the executive branch is in a better position than this Court to decide Plaintiff's

12    naturalization Application.  *See Orlando Ventura*, 537 U.S. at 17 ("The agency can bring its

13    expertise  to  bear  upon  the  matter;  it  can  evaluate  the  evidence;  it  can  make  an  initial

14    determination; and, in doing so, it can, through informed discussion and analysis, help a court later

15    determine whether its decision exceeds the leeway that the law provides.")  First, the USCIS is

16    charged with deciding naturalization applications, which it does on a frequent basis.  *See* 8 U.S.C.

17    § 1446(a).   In general, therefore, the USCIS is better equipped to apply immigration laws

18    thoroughly and consistently in the first instance.  *See, e.g., Deng v. Chertoff*, No. C 06-7697 SI,

19    2007 WL 1501736, at *1 (N.D. Cal. May 22, 2007) ("The Court finds it appropriate to remand this

20    action  to  USCIS  because  that  agency  has  considerably  more  expertise  than  the  Court  in

21    adjudicating naturalization petitions.")

22            Second, if Plaintiff is dissatisfied with USCIS' decision on his Application, he may seek

23    review of USCIS' decision through a hearing before an immigration officer pursuant to 8 U.S.C.

24    § 1421(c), and then seek review of the administrative decisions at the district court.  In other

25    words, judicial review of Plaintiff's naturalization Application remains a remedy should USCIS

26    deny Plaintiff's Application.

27            Third,  judicial  review  after  administrative  exhaustion  would  be  more  beneficial  and

28    efficient because the underlying record would be fully developed and USCIS would be allowed an

1    opportunity to exercise its expertise in this area of law and apply it to the facts of the case.  As

2    such, the Court would be better positioned at that stage to consider Plaintiff's naturalization

3    Application.

4         Plaintiff contends USCIS has not been acting fairly as evidenced by its decision to institute

5    removal proceedings against him twice but subsequently failing to defend against Plaintiff's

6    motion to terminate the removal proceedings.  Plaintiff contends USCIS has never produced

7    evidence to establish Plaintiff is subject to deportation based on fraud in his visa application.

8    Additionally, Mr. Simonian's declaration notes he offered to remand this matter with an instruction

9    that the government be restrained from instituting removal proceedings until such time as a full

10   appeal was final, including a de novo appeal before this Court, but this offer was rejected by

11   Defendants.  Plaintiff contends that "[i]f the case is remanded, it is apparent by the Declaration of

12   Stephen Hull and the denial of the government of Plaintiff['s] offer to remand with instructions[,]

13   that the Government will again follow the same path of denial of the N-400 [application] and

14   [would] immediate[ly] institute[e] removal proceeding[s]."  (Doc. 10, 2:20-23.)

15        Despite Plaintiff's assertions, even if the Court were to retain jurisdiction over Plaintiff's

16   naturalization Application, the government remains free to initiate removal proceedings again, as

17   Defendants note, and the Court would be precluded from acting on the Application.  8 U.S.C.

18   § 1429 ("no personal shall be naturalized against whom there is outstanding a final finding of

19   deportability pursuant to a warrant of arrest issued under the provision of this chapter or any other

20   Act").  Thus, the Court's retention of jurisdiction over Plaintiff's Application does not cure the

21   potential for the institution of removal proceedings against Plaintiff.

22        Moreover, the institution of two removal proceedings coupled with U.S Immigration and

23   Customs Enforcement's ("ICE") failure to defend against motions to terminate each removal

24   proceeding does not establish USCIS's unwillingness to fairly adjudicate Plaintiff's naturalization

25   Application pursuant to law.  Additionally, Section 1447(b)'s primary purpose is to promote timely

26   adjudication of naturalization applications, not place naturalization decisions in the hands of the

27   courts in the first instance because of fears USCIS will not appropriately apply the law.  *See*

28   *Hovsepian*, 359 F.3d 1144, 1160 (9th Cir. 2004) ("A central purpose of [Section 1447(b)] was to

reduce the waiting time for naturalization applicants."). The availability of judicial review following final administrative decisions is sufficient to address concerns with respect to USCIS' application of the law and is not a basis for the Court to decide the application in the first instance.

Finally, because USCIS indicates it is able to render a decision on Plaintiff's N-400 Application for Citizenship within 15 days from the date of this order, Plaintiff's Application will be decided more quickly before the agency than before the Court. After the agency renders its decision, Plaintiff still retains the ability to appeal USCIS' decision and seek judicial review. 8 U.S.C. § 1447(a)-(b).

In sum, the facts of this case do not warrant retention of jurisdiction over Plaintiff's naturalization Application, and it is remanded to USCIS for adjudication in the first instance.

## IV.    CONCLUSION

For the reasons set forth above, it is HEREBY ORDERED that:

1.    Defendants' motion to remand is GRANTED;

2.    This matter is remanded to USCIS for adjudication of Plaintiff's N-400 Citizenship Application within 15 days of this order; and

3.    This case shall be administratively closed.

IT IS SO ORDERED.

Dated:   **March 18, 2014**                              **/s/ Sheila K. Oberto**
                                                    UNITED STATES MAGISTRATE JUDGE